**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **DAVID BARNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:20-cv-00337-CHB-RSE** |
| | ) | |
| **v.** | ) | *Filed Electronically* |
| | ) | |
| **FIRST NATIONAL BANK OF** | ) | |
| **OMAHA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

\* \* \* \* \*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT FIRST NATIONAL BANK OF OMAHA'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff David Barnett ("Plaintiff"), through undersigned counsel, hereby submits this opposition to Defendant First National Bank of Omaha's ("Defendant" or "FNBO") Motion for Summary Judgment.

Defendant is not entitled to judgment as a matter of law because it has not carried its initial burden to establish that Plaintiff consented, and there are genuine issues of material fact as to the issue of an automated telephone dialing system ("ATDS").

First, Defendant has not provided any evidence to support its defense that Plaintiff ever consented to receiving calls to his cell phone number ending in 2101. While Defendant claims Plaintiff consented to receiving calls made otherwise in violation of the Telephone Consumer Protection Act ("TCPA") (doc. 31-1 at 2, ¶6), Defendant has not produced the relevant application nor credit card agreement. Even if Plaintiff had granted consent, a jury could reasonably conclude that he revoked consent to be called based on the call recordings produced by Defendant and Plaintiff's testimony.

Second, Defendant called Plaintiff and delivered pre-recorded messages 111 times without

i

*Barnett, David v. First National Bank of Omaha*
*Plaintiff's Opposition to Motion*
*for Summary Judgment*

Plaintiff's consent. That alone requires the denial of summary judgment.

Third, Defendant's system has the capacity to, and in fact does, store telephone numbers using a random or sequential number generator, and then dial those numbers without human intervention, meeting the statutory definition of an ATDS. 47 U.S.C. §227(a)(1). Defendant's software automatically stores lists of telephone numbers at the beginning of each day. Defendant calls using LiveVox Quick Call, which determines the order in which it will make calls, and then dials telephone numbers, constantly reorganizing the list. Quick Call dials many more telephone numbers than agents are able to handle, because Quick Call is permanently calculating how many dials it takes before a live person answer the call and anticipates when an agent will become available to be connected to the person answering. Only when a live person answers a call does Quick Call connect that call to an agent. Furthermore, Quick Call can and does play prerecorded messages when a live person or an answering machine answers the call. Because Quick Call reorganizes the list of telephone numbers, Quick Call also operates as an ATDS as described in note 7 of *Facebook*.

Defendant violated the Kentucky Consumer Protection Act ("KCPA") and intruded upon Plaintiff as a matter of law, or at least the question should be determined by a jury. Plaintiff never consented to receiving telephone calls. Even if he did, he revoked consent. Furthermore, Plaintiff put Defendant on notice several times that he was unable to make a payment. Yet, Defendant called Plaintiff another five hundred and seventy-four (574) times in seven months. A jury could reasonably conclude that these calls were unfair/unconscionable as required for liability under the KCPA, and that the calls constitute hounding of Plaintiff as required for intrusion upon seclusion.

Pursuant to Local Rule 7.1(f), Plaintiff hereby requests a hearing or oral argument in this matter.

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   LEGAL STANDARD .................................................................................................... 2

III.  ARGUMENT .................................................................................................................. 3

    A.   Liability under the TCPA ........................................................................................ 3

    B.   Defendant did not have Plaintiff's Consent. ............................................................ 4

        i.    Defendant has not established that it had Plaintiff's consent. .................... 4

        ii.   Plaintiff revoked consent to be called. ...................................................... 4

    C.   The Quick Call System Used by Defendant is an ATDS. ...................................... 6

        i.    Defendant's system has the capacity to store telephone numbers
            using a random or sequential number generator ........................................ 7

        ii.   Defendant's system has the capacity to dial telephone numbers
            without human intervention ..................................................................... 10

    D.   Defendant violated the KCPA and intruded upon Plaintiff's seclusion
       because it called Plaintiff 574 times after it had notice that Plaintiff was
       unable to pay. ........................................................................................................ 11

        i.    Defendant violated the KCPA because 574 calls is an
            unfair/unconscionable conduct, as a jury could conclude the calls
            were made to annoy, abuse or harass Plaintiff. ...................................... 11

        ii.   Defendant intruded upon Plaintiff's seclusion because 574 calls
            constitute a hounding as a matter of law or a jury could reasonable
            conclude Defendant's conduct was a hounding ...................................... 12

IV.   CONCLUSION ............................................................................................................ 13

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

iii

# TABLE OF AUTHORITIES

## Cases

*Barr v. Am. Ass'n of Pol. Consultants, Inc*,
 140 S. Ct. 2335 (2020)............................................................................................................ 1

*Brown v. Ocwen Loan Servicing LLC*,
 No. 8:18-CV-136-T-60AEP, 2019 WL 4221718, at *1 (M.D. Fla. Sept. 5, 2019)................... 8

*Bruederle v. Louisville Metro Gov't*,
 687 F.3d 771 (6th Cir. 2012) ................................................................................................... 2

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)........................................................ 2

*Cesaire v. Med. Servs., Inc.*
 No. 615CV1886ORL28DCI, 2016 WL 6910257, *5 (M.D. Fla. Nov. 23, 2016).................... 6

*Charvat v. NMP, LLC*,
 656 F.3d 440 (6th Cir. 2011) ................................................................................................. 13

*Facebook, Inc. v. Duguid*,
 141 S. Ct. 1163 (2021).................................................................................................... 3, 7, 8

*Getz v. DIRECTV, LLC*,
 359 F. Supp. 3d 1222 (S.D. Fla. 2019).................................................................................... 3

*Glasser v. Hilton Grand Vacations Co., LLC*,
 948 F.3d 1301 (11th Cir. 2020) ............................................................................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ............................................ 2, 3

*Meyer v. Portfolio Recovery Assocs.*,
 707 F.3d 1036 (9th Cir. 2012) ................................................................................................. 3

*Mosholder v. Barnhardt*,
 679 F.3d 443 (6th Cir. 2012) ............................................................................................... 2, 3

*Robertson v. Lucas*,
 753 F.3d 606 (6th Cir. 2014) ................................................................................................... 2

*Ruffrano v. HSBC Fin. Corp.*,
 No. 15CV958A, 2017 U.S. Dist. LEXIS 132674, at *51 n.2 (W.D.N.Y. Aug. 17, 2017)......... 6

*Warnick v. Dish Network LLC*,
 No. 12-CV-01952-WYD-MEH, 2014 WL 12537066, at *6 (D. Colo. Sept. 30, 2014) ........... 8

*Whitehead v. Ocwen Loan Servicing, LLC*,
 No. 2:18-cv-470-FtM-99MRM, 2018 U.S. Dist. LEXIS 182386, 2018 WL 5279155, at *4
 (M.D. Fla. Oct. 24, 2018) ........................................................................................................ 7

*Williams v. Schanck*,
 Case No.: 5:15-cv-01434-MHH, 2021 U.S. Dist. LEXIS 116218 (N.D. Ala. June 22, 2021). 10

iv

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

**Other Authorities**

*In re Rules & Regulations Implementing the TCP Act of 1991 et al.*
  ("2015 Ruling"), 30 FCC Rcd 7961, 7996 (2015) ................................................................ 7

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*,
  30 FCC Rcd. 7961, 7996 ¶ 64, 2015 WL 4387780 (2015) ....................................... 8

Ky. Gp. Att'y Gen. 2-161, Ky. OAG 83-121,WL 166379 (Ky. A.G.)......................................... 10

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 2

Fed. R. Civ. P. 56(e) ........................................................................................................ 3

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

## I.   __INTRODUCTION__

Plaintiff needed bilateral knee replacement surgery and was out of work for almost a year. Consequently, he was unable to pay Defendant his debt of $757.52. With full knowledge of Plaintiff's financial situation, Defendant engaged in an evidently harassing and punitive campaign of calling Plaintiff's cellular telephone five hundred and seventy-four (574) times in seven months.

Plaintiff brought this action against Defendant pursuant to (1) the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C §227; (2) the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. § 367.170; and (3) for Invasion of Privacy-Intrusion Upon Seclusion, as derived from §652B of the Restatement (Second) of Torts.

Defendant violated the TCPA by calling Plaintiff's cellular telephone with the use of an automatic telephone dialing system ("ATDS)"), and/or prerecorded messages.

The TCPA was passed in 1991 in response "to a torrent of vociferous consumer complaints about intrusive robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2344 (2020). "Consumers were outraged and considered robocalls an invasion of privacy regardless of the content or the initiator of the message." *Id.* (internal quotation marks omitted).

> A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."

*Id.*, quoting 137 Cong. Rec. 30821 (1991).

Congress determined that the most effective way to address this "scourge" was to ban the use of the machines that were causing such disruption in the daily lives of Americans. To do so, Congress made it an actionable offense to use an ATDS to initiate a call to a cell phone without the express consent of the recipient, defining an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

generator; and (B) to dial such numbers." 47 U.S.C. §277(a)(1).

Defendant engaged in exactly the type of conduct the TCPA outlawed. Defendant called Plaintiff five hundred and seventy-four (574) times with an ATDS after he revoked consent to be called, wherein one hundred eleven (111) of those calls were pre-recorded messages.

Defendant's conduct was also a violation of the KCPA as Defendant knew Plaintiff could not pay and thus a jury could reasonably conclude the intention was to annoy, abuse or harass Plaintiff with that many calls. Additionally, the calls constitute a hounding as a matter of law, or a jury could reasonably conclude the calls were a hounding.

Defendant's calling caused Plaintiff distraction, annoyance, frustration, and temporary loss of use of his telephone line, stress, anxiety, embarrassment, severe emotional and mental pain, and anguish to the point Plaintiff needed to have certain medication increased due to the consequences of the added stress.

## II.   LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012). "In considering a motion for summary judgment, [a] court construes all reasonable inferences in favor of the nonmoving party." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "Once the moving party satisfies its initial burden, the

*Barnett, David v. First National Bank of Omaha*
*Plaintiff's Opposition to Motion*
*for Summary Judgment*

burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Mosholder*, 679 F.3d at 448-49; see also Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

## III.   ARGUMENT

### A.   Liability under the TCPA.

The TCPA "makes it illegal to 'make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice' . . . to any 'cellular telephone device' without the 'prior express consent of the called party.'" *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1305 (11th Cir. 2020) (quoting 47 U.S.C. §227(b)(1)(A)); *see Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021) ("The Telephone Consumer Protection Act of 1991 (TCPA) proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an "automatic telephone dialing system.") (quoting 47 U.S.C. §227(a)(1), (b)(1)(A)). "The statute separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones, unless an exception applies." *Facebook*, 141 S. Ct. 1167 (quoting 47 U.S.C. §227(b)(1)(A), (B)).

Accordingly, "to state a claim for a violation of the TCPA, a plaintiff must set forth sufficient facts supporting that: (1) a call was made to a cell or wireless phone, (2) by the use of an automatic dialing system or an artificial or prerecorded voice, and (3) without prior consent of the called party." *Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1230 (S.D. Fla. 2019) (emphasis in original); *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1043 (9th Cir. 2012).

Here, there is no genuine dispute of material fact that Defendant called Plaintiff's cell phone repeatedly with an ATDS 574 times, of which 111 times were with prerecorded messages —without his consent.

3/16

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

**B.      Defendant did not have Plaintiff's Consent.**

>    *i.        Defendant has not established that it had Plaintiff's consent.*

Defendant has failed to carry its burden of establishing that it had Plaintiff's consent to call him with the use of an ATDS or prerecorded messages. While Defendant claims Plaintiff consented to receiving calls made otherwise in violation of the TCPA (doc. 31-1 at 2, ¶6), Defendant has not produced the relevant credit application. Defendant cannot produce that application because Defendant simply does not have it. (*See*, Defendant's Disclosure Statement attached hereto as Exhibit 1, listing the Cardmember Agreement but not listing Plaintiff's application.) In fact, the Cardmember Agreement Defendant produced is dated August 1, 2015, which is more than a year after Plaintiff applied for credit. (*See*, Exhibit 2.)  Neither has Defendant established how or when Plaintiff provided his telephone number to Defendant.

>    *ii.        Plaintiff revoked consent to be called.*

Even if Plaintiff had granted consent, a jury could reasonably conclude that he revoked consent to be called based on the call recordings produced by Defendant and in Plaintiff's testimony. The Federal Communications Commission ("FCC") is charged by statute with "prescrib[ing] regulations to implement the requirements of" the TCPA. 47 U.S.C. §227(b)(2). In furtherance of this charge, the FCC has stated that, despite the absence of any reference to revocation in the text of the statute, "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing." *In re Rules & Regulations Implementing the TCP Act of 1991 et al.* ("2015 Ruling"), 30 FCC Rcd 7961, 7996 (2015). In assessing whether a method was reasonable, the FCC instructed to look "to the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance, and whether the caller could have implemented mechanisms to

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

effectuate a requested revocation without incurring undue burdens." *Id.* at 7996 n.233. The FCC further instructed that "callers may not abridge a consumer's right to revoke consent using any reasonable method," and "consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and those callers may not infringe on that ability by designating an exclusive means to revoke." *Id.* at 7996.

A jury could reasonably conclude that Plaintiff revoked consent based on "the totality of the facts and circumstances". Plaintiff revoked consent to be called on his cellular telephone several times. Plaintiff testified that he requested Defendant to stop calling him when he answered calls from Defendant. (*See* Barnett Depo. at 14:25-15:2; 16:15-18, attached hereto as Exhibit 3.)

Defendant recorded some conversations where Plaintiff revoked consent. (*See* Exhibits 4 through 10.) On each one of the calls recorded, Plaintiff explained that he could not pay because he had no money, that he had no money because he had had two knee replacement surgeries and was thus unemployed for almost a year. (*Id.*) Plaintiff further promised that he would call Defendant when he was again able to pay. (*Id.*) Plaintiff further explained that whatever Defendant's agents would need to say, that they should mail that to Plaintiff rather than over the phone. (*Id.*)

The transcripts of those recordings do not reflect "the totality of the facts and circumstances."  First, the transcripts ignore the tone of the conversations. Second, the transcripts ignore that Plaintiff did not engage with Defendant's agents each time they tried to pressure him into making a payment or promising to make a later payment. Third, the transcripts also ignore that Plaintiff did not want to continue to discuss anything with Defendant over the phone, as Plaintiff would just hang up on Defendant's agents.

"[T]he totality of the facts and circumstances" standard is consistent with the definition of

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

revocation under the Restatement (Second) of Torts: "[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct. This unwillingness may be manifested to the actor by any words or conduct inconsistent with continued consent". Restatement (Second) of Torts §892A (1979), cmt. i.

There is sufficient evidence on the record to support a reasonable finding that Defendant knew or had reason to know that Plaintiff wanted Defendant to stop calling him. Defendant knew that Plaintiff could not pay and did not wish to be called. Plaintiff even requested that Defendant contact him through the mail and refused to engage over the phone. "There [are] no 'magic words' that manifest . . . revocation." *Ruffrano v. HSBC Fin. Corp.*, No. 15CV958A, 2017 U.S. Dist. LEXIS 132674, at *51 n.2 (W.D.N.Y. Aug. 17, 2017).

Because Plaintiff clearly communicated his unwillingness to continue to receive calls, Defendant's reliance on *Cesaire* is misplaced. In *Cesaire*, the plaintiff expressly made his revocation of consent conditional, stating "if you can't give the information, don't call my phone." *Cesaire v. Med. Servs., Inc.* No. 615CV1886ORL28DCI, 2016 WL 6910257, *5 (M.D. Fla. Nov. 23, 2016)). The court determined that this conditional statement was not clear enough to revoke consent. *Id.*, at *6. Unlike the plaintiff in *Cesaire*, Plaintiff did not condition his revocation of consent; he flatly told Defendant that he could not pay and that he would call Defendant when he could, expressly requesting that further communications be sent by mail, not just one time but on seven recorded calls.

Because Plaintiff revoked consent by clearly communicating to Defendant his unwillingness to continue to receive calls, the Court should deny summary judgment and present the question to the jury.

### C.     The Quick Call System Used by Defendant is an ATDS.

While the body of ATDS case law continues to develop in the aftermath of *Facebook*, one

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

thing is certain: *Facebook* does not unambiguously require that a dialer must randomly or sequentially generate phone numbers to qualify as an ATDS. Despite Defendant's insinuations, this proposition is nowhere to be found in the Supreme Court's decision. The only clue as to what "numbers" are being generated by the "random number generator" is in note 7, and based on the actual text of note 7, an ATDS may use a random or sequential number generator to determine the order in which to dial phone numbers contained in a preproduced list.

Although it is clear that the Quick Call system is an ATDS—or at least presents a question of fact to the jury—whether the Quick Call system meets the definition of an ATDS is not dispositive of Plaintiff's other claims. Specifically, Defendant used an artificial or prerecorded voice when calling Plaintiff on about one hundred occasions. The TCPA prohibits calls "using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. §227(b)(1)(A)(iii) (emphasis added). Calls made using an artificial or prerecorded voice are independently actionable from calls made using an ATDS. *Whitehead v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-470-FtM-99MRM, 2018 U.S. Dist. LEXIS 182386, 2018 WL 5279155, at *4 (M.D. Fla. Oct. 24, 2018). Accordingly, for any calls that left a prerecorded message, the issue of whether the system qualifies as an ATDS is irrelevant.

i.     *Defendant's system has the capacity to store telephone numbers using a random or sequential number generator.*

Defendant's system meets the statutory definition of an ATDS and the Quick Call software itself meets the definition in *Facebook*. The Supreme Court has recently decided that "to qualify as an 'automatic telephone dialing system' under the TCPA, a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator." *Facebook*, 141 S. Ct. 1164. In addition, "an auto dialer might use a random [or sequential] number generator to determine the

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id*. at 1172, n7. Based on *Facebook*, the random or sequential number generator element of an ATDS is also satisfied by using a random or sequential number generator to <u>determine the order</u> of phone numbers to be dialed. It readily follows that a dialer does not have to fabricate phone numbers out of thin air to meet *Facebook's* definition of an ATDS.

To be clear, it is not necessary for an ATDS to dial telephone numbers it generates randomly or sequentially. Rather, as the statute makes plain, "'automatic telephone dialing system' means equipment which has the **capacity** (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1) (emphasis added); *accord Duguid*, 141 S. Ct. at 1173 ("We hold that a necessary feature of an auto dialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called.").

There is no dispute in this case that Defendant used equipment to call Plaintiff that meets the statutory definition of ATDS, because it stores telephone numbers using a random or sequential number generator. Different pieces of software are considered a "system". *Brown v. Ocwen Loan Servicing LLC*, No. 8:18-CV-136-T-60AEP, 2019 WL 4221718, at *1 (M.D. Fla. Sept. 5, 2019) (the calling party used a RealServicing Loan Platform to create a call list, then transfer that list to a software called Advanced List Management where dialing rules were configured, and then the telephone number list and dialing rules were transferred to yet another software that would make the calls, the Aspect Unified IP); *Warnick v. Dish Network LLC*, No. 12-CV-01952-WYD-MEH, 2014 WL 12537066, at *6 (D. Colo. Sept. 30, 2014) ("DISH's dialing system is comprised of dialer software and hardware from Cisco Systems, Inc. and separate software from Austin Logistics that manages the call campaigns.").

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

Defendant testified:

> every day, our TWX system generates a file of all of our accounts that are past due
> and that are eligible to be called today; at which point, that file is created and sent
> to the LiveVox System for our administrators to work with their file and to field in-
> calling campaigns for the day.

(*See* Osborne Dep. at 17:14-18:6, attached hereto as Exhibit 11.) The software generates those lists

automatically, even on days that Defendant will not be calling debtors. (*Id*. at 18:7-19:1.) What

information is contained on those lists is predetermined and changes "may happen a couple of

times a year." (*Id*. at 29:1-5.) Defendant then uploads that list to Quick Call. (*Id*. at 31:22-25; doc.

31-1 at 3, ¶12.) Only after, do employees determine the calling strategy "based on delinquency,

balances, other types of segmentation, from time zones and so forth." (*Id.* at 21:7-19.) Never do

employees pick or exclude specific numbers, they only operate with accounts that share the same

attribute: delinquency, balances, etc. (*Id*. at 34:11-19.)

While a campaign is running, Quick Call itself does store new lists of telephone numbers

using a random or sequential number generator to call those numbers later, precisely as described

in note 7 of *Facebook*.

57.     A campaign is simply a stored electronic list of telephone numbers
organized by some defined criteria that are to be called for a specific purpose. The
dialing system software generates a sequence of telephone numbers to call based
upon dialing rules, and then automatically dials the numbers in that sequence. The
criteria are defined by the administrative user and configured into the dialing
system. **The sequence and order of telephone numbers is generated and stored
automatically for dialing**. The dialing rules for a particular campaign also include
the sequence and order of the telephone numbers for dialing.

58.     The LiveVox dialing system platform uses Segmentation, Contact
Timing rules, and filtering rules, as software functions to initiate automatic
outbound calls to a contact list in a particular numerical sequence and order. **These
functions use particular sorting and numeric software algorithms to create a
particular sequence of telephone numbers to be dialed in a particular order.**
The function of storing telephone numbers to create a stored list of numbers in a
particular numerical sequence and order is built into the LiveVox dialing system
platform. It is not a theoretical, potential, or abstract function. The LiveVox dialing
system platform has this capability.

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

(*See,* Exhibit 12, Decl. of Snyder at 22-23, ¶57) (emphasis added).

Quick Call further meets the description of note 7 in *Facebook* because it has the capacity to identify randomly generated numbers. The function is built into the Quick Call dialing system platform. (*Id.* at ¶59.) "The Eleventh Circuit Court of Appeals recently noted that '[t]he statute . . . applies to devices that have the 'capacity' to identify randomly generated numbers; it does not require that capacity to be used in every covered call.'" *Williams v. Schanck*, Case No.: 5:15-cv-01434-MHH, 2021 U.S. Dist. LEXIS 116218 (N.D. Ala. June 22, 2021) (quoting *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1312 (11th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 546 (Apr. 19, 2021)). Therefore, in following the logic of the eleventh circuit, Plaintiff does not need to prove that the Quick Call system identified his number randomly, but only that the system has the capacity to identify randomly generated numbers.

> ii.     *Defendant's system has the capacity to dial telephone numbers without human intervention.*

It is beyond dispute that Quick Call can and does dial telephone numbers automatically and without human intervention. Quick Call can predict when an agent will become available and dial telephone numbers, as many as it predicts will need to be dialed to reach a live person. (*See* Exhibit 11, Osborne Dep. at 49:22-50:9.) However, Quick Call does not even need available agents, as it can dial telephone numbers and recognize if an answering machine answered the call, and only then play a prerecorded message. (*Id*. at 52:6-9.)

Quick Call launched calls to Plaintiff without human intervention a total of 574 times, and in 111 of those times even played a prerecorded message or sent a predetermined text message. Defendant testified that entries with codes "AutoV" or "AutoY" without any code on the third column, mean Quick Call itself dialed the telephone number and made the entry, without any human intervention. (*See* Exhibit 11, Osborne Dep. at 71:4-20.) Defendant further testified that

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

entries with codes "AutoV" or "AutoY" together with the code "T1NML" mean Quick Call left a prerecorded message, whereas if the message would have been left by an agent the entry would reflect the agent's ID number instead of "AutoV" or "AutoY". (*See*, Exhibit 11, Osborne Dep. at 73:22-74:1.) In the case of entries with the code "TXTXT" with the codes "AutoV" or "AutoY", those are predetermined text messages sent —without human intervention— to Plaintiff. (*Id*. at 74:2-14.) In fact, Quick Call dialed Plaintiff's cellular telephone number 574 times and left a prerecorded message on his answering machine or sent a predetermined text message 111 times. (*See,* Call log attached as Exhibit 13.)

Because Defendant's system did use prerecorded messages 111 times, this issue in and of itself requires that summary judgment be denied. Because Defendant's system has the capacity to store telephone numbers using a random or sequential number generator, and then to dial those telephone numbers without human intervention, the Court should deny summary judgment.

**D.      Defendant violated the KCPA and intruded upon Plaintiff's seclusion because it called Plaintiff 574 times after it had notice that Plaintiff was unable to pay.**

Because Defendant had notice that Plaintiff was unable to pay, the 574 times Defendant called were "unfair", meaning "unconscionable", and "hounding". Additionally, because both standards refer to a reasonable person, the question is to be resolved by a jury and not in summary judgment.

> i.      *Defendant violated the KCPA because 574 calls is an unfair/unconscionable conduct, as a jury could conclude the calls were made to annoy, abuse or harass Plaintiff.*

Defendant's calling was unfair and unconscionable under the KCPA because Defendant's calling would be a violation of the FDCPA. The Kentucky Attorney General has for a long time opined that the Fair Debt Collection Practices Act ("FDCPA") serves as a guideline for the KCPA. "[A]lthough the FDCPA applies only to third party debt collectors, it serves as a guideline for

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

determining what is an unfair, false, misleading, or deceptive practice in violation of the Kentucky

Consumer Protection Act, KRS 367.170." *Office of Continuing Legal Education at the University*

*of Kentucky College of Law*, "Kentucky Consumer Law Conference" (2004). Continuing Legal

Education Materials. 45. https://uknowledge.uky.edu/uky_cle/45 (quoting 1983 Ky. Gp. Att'y

Gen. 2-161, Ky. OAG 83-121, 1983 WL 166379 (Ky. A.G.)). The FDCPA makes it unlawful to

"[c]aus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or

continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C.

§1692d(5). Because a jury could reasonably conclude that Defendant continuing to call Plaintiff

when Plaintiff had told it several times that he could not pay because he simply did not have the

money, served no other purpose than to annoy, abuse, or harass Plaintiff, the Court should deny

summary judgment.

>     ii.     *Defendant intruded upon Plaintiff's seclusion because 574 calls constitute*
>             *a hounding as a matter of law or a jury could reasonable conclude*
>             *Defendant's conduct was a hounding.*

Defendant's 574 calls to Plaintiff within seven months after Plaintiff explained he could

not pay constitutes a hounding as a matter of law, or at least a question for the jury. Under §652B

of the Restatement (Second) of Torts, "one who intentionally intrudes, physically or otherwise,

upon the solitude or seclusion of another . . . is subject to liability to the other for invasion of his

privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second)

of Torts (1977). It logically follows that whether Defendant's conduct rises to the level to constitute

intrusion upon seclusion is a question of fact, given it inherently depends how a reasonable person

would construe that conduct, and thus the question is for determination by a jury and not in

summary judgment.

Further, telephone calls are an intrusion upon seclusion when the calls are so persistent as

"to amount to a course of hounding". The restatement explains, "there is no liability for knocking

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

at the plaintiff's door or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is . . .when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff . . . that his privacy is invaded." Restatement (Second) of Torts (1977), Section 652B, cmt. d. The Sixth Circuit has held that "[t]he threshold of when the number of calls becomes so persistent and frequent as to constitute 'hounding' is not clearly delineated; we cannot say as a matter of law that thirty-one calls over three months does not constitute a substantial burden." *Charvat v. NMP, LLC*, 656 F.3d 440, 454 (6th Cir. 2011).

It is evident that 574 calls in seven months is vastly more persistent and frequent than thirty-one (31) calls in three months, therefore the Court can conclude that Defendant hounded Plaintiff as a matter of law or that the question should be determined by a jury and not in summary judgment.

## IV. <u>CONCLUSION</u>

The Court should deny summary judgment because Defendant has not met the initial burden to show that Plaintiff consented and because there is sufficient evidence for a jury to reasonably find that Plaintiff revoked consent.

The Court should further deny summary judgment because Defendant violated the TCPA. First, Defendant called Plaintiff 111 times with the use of prerecorded messages. Second, Defendant's system meets the statutory definition of an ATDS and note 7 of *Facebook*.

Finally, the Court should further deny summary judgment because a jury could reasonably find that 574 calls after Defendant had notice that Plaintiff could not pay were intended to annoy, abuse or harass Plaintiff. Additionally, the Court should find that 574 calls after Defendant had notice that Plaintiff could not pay constitute a hounding, or the question should be decided by a jury.

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

Respectfully submitted,

PRICE LAW GROUP, APC
Santiago J. Teran *admitted pro hac vice*

<u>s/ Santiago J. Teran</u>
2125 Biscayne Boulevard
Miami, Florida 33137
Direct: (347) 946-7990
Telephone: (818) 600-5586
santiago@pricelawgroup.com

James Craig
CRAIG HENRY PLC
401 West Main Street, Suite 1900
Louisville, Kentucky 40202
Telephone: (502) 614-5962
Facsimile: (502) 614-5968
jcraig@craighenrylaw.com

*Counsel for Plaintiff David Barnett*

*Barnett, David v. First National Bank of Omaha*
Plaintiff's Opposition to Motion
for Summary Judgment

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

Copies of native format of audio recordings marked as Exhibits 4 through 10 have been mailed to parties below:

Chambers of District Judge Claria H. Boom
Gene Snyder United States Courthouse
601 W Broadway
Room 252
Louisville, KY 40202-2227

Richard Boydston
DENTONS BINGHAM GREENEBAUM LLP
255 East Fifth Street #2350
Cincinnati, Ohio 45202

Cory J. Rooney
ROONEY LAW
P.O. Box 382
Omaha, Nebraska 68101

_/s/_Santiago J. Teran

_Barnett, David v. First National Bank of Omaha_
Plaintiff's Opposition to Motion
for Summary Judgment