UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| DAVID BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-cv-337-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| FIRST NATIONAL BANK OF OMAHA, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff David Barnett's Motion for Reconsideration, [R. 40]. Defendant First National Bank of Omaha ("FNBO") responded, [R. 43], and Barnett replied, [R. 44]. This matter is now ripe for review. For the reasons stated below, Barnett's Motion for Reconsideration is denied.

**I.    Background**

On or about March 7, 2014, Barnett applied for and received a FNBO credit card account ending in 9550 ("Account"). [R. 31, p. 5, ¶ 1; R. 31–1, Ex. A, p. 2, ¶ 5]. When applying for the Account, Barnett provided FNBO his cellular number as a way for FNBO to contact him. [R. 31, p. 5, ¶ 2; R. 31–2, Ex. B, p. 4 at 12:22–13:4]. In 2019, Barnett was allegedly unable to make his minimal monthly payments because he was off work due to a bilateral knee replacement. [R. 31, p. 5, ¶ 3; R. 31–2, Ex. B, p. 4 at 13:5–25; R. 32, p. 6]. As a result, FNBO started to contact Barnett, via its telephone system LiveVox, to discuss his missed payments, which totaled around $122.00 and grew to $757.52. [R. 31, pp. 5–6, ¶¶ 4, 6, 9; R. 31–2, Ex. B, p. 4 at 13:22–25; R. 32, p. 6; R. 32–10, Ex. 10]. Over a seven-month period, FNBO contacted Barnett, via phone call,

text message, or prerecorded message, 574 times—an average of 3.2 times a day (excluding Sundays). [R. 32, p. 6; R. 32–11, Ex. 11, p. 19, 18:10–11; R. 32–13, Ex. 13]. On several occasions, Barnett instructed FNBO to mail him his billing statements and appeared to hang up on FNBO representatives. [R. 31, p. 5, ¶¶ 4–6; R. 31–2, p. 5 at 20:6–24]. He also testified he instructed them, at some point, to stop calling him. [R. 32–3, pp. 3–4, 14:17–15:2].

On May 13, 2020, Barnett filed a Complaint in this Court, alleging three counts. In Count I, Barnett asserted FNBO violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; in Count II, he claimed FNBO violated the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. § 367.170; and in Count III, he brought an intrusion upon seclusion claim. [R. 1, pp. 5–7, ¶¶ 38–48]. FNBO moved for summary judgment, [R. 31]. Barnett responded, [R. 32], and FNBO replied, [R. 35].

On March 3, 2022, the Court entered a Memorandum and Opinion, [R. 37], in which it granted in part and denied in part FNBO's motion. With regard to the TCPA claim, the Court granted FNBO's motion as to all calls, except the 111 prerecorded calls and text messages, because they were not made via an automatic telephone dialing system ("ATDS") system, as required under the TCPA and interpreted by the Supreme Court in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021). *Id.* at 4–5, 9, 21. The 111 prerecorded calls and text messages survived FNBO's motion because they were found to be independently actionable under the TCPA. *Id.* at 10, 21. The Court dismissed Barnett's KCPA claim because Barnett failed to allege, as required by the law, that he suffered from an "ascertainable loss of money or property." *Id.* at 17–18; Ky. Rev. Stat. § 367.220. Finally, the Court denied FNBO's motion as to Barnett's intrusion upon seclusion claim, finding that it remained a question for the jury as to whether FNBO's conduct of

contacting Barnett up to 82 times per month, or about 3.2 calls per day (excluding Sundays), amounted to hounding. [R. 37, p. 20].

On March 21, 2022, Barnett timely filed a Motion for Reconsideration ("Motion"), [R. 40]. FNBO responded, [R. 43], and Barnett replied, [R. 44].

**II.   Analysis**

    **A. Rule 59**

Motions to reconsider may be treated as motions to alter/amend judgment under Federal Rule of Civil Procedure 59(e), which allows a party to file a motion to alter or amend a judgment within twenty-eight days of its entry. *Huff v. Metro. Life. Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982); FED. R. CIV. P. 59(e). While the rule permits a district court to "alter or amend a judgment" that has already been entered, it "does not exist to provide an unhappy litigant an opportunity to relitigate issues the court has already considered and rejected." FED. R. CIV. P. 59(e); *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 495 (6th Cir. 2018). Stated differently, the Sixth Circuit has consistently held that a Rule 59(e) motion should not be used to either reargue a case on the merits or the issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citations omitted), or otherwise to "merely restyle or rehash the initial issues." *White v. Hitachi, Ltd.*, No. 3:04–CV–20, 2008 WL 782565, at *3 (E.D. Tenn. March 20, 2008) (internal quotation marks and citation omitted).

In the Sixth Circuit, a district court has discretion to set aside a judgment under Rule 59(e) "based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Brumley v. United Parcel Serv. Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). Furthermore, because there is an interest in

the finality of a decision, relief under Rule 59(e) "constitutes an extraordinary remedy reserved for exceptional cases." *Tannins of Indianapolis, LLC v. Cameron*, No. 3:19–CV–504–DJH–CHL, 2021 U.S. Dist. LEXIS 246548, at *5–6 (W.D. Ky. Dec. 28, 2021) (citation and internal quotation marks omitted).

### B.  Clear Error

The clear error of law standard under Rule 59(e) is exceptionally high, requiring the movant to "establish not only that the errors were made, 'but that these errors were so egregious that an appellate court would not affirm the judgment.'" *Salinas v. Hart*, No. CV 15-167-HRW, 2020 WL 1560061, at *3 (E.D. Ky. Apr. 1, 2020) (citing *Dorger v. Allstate Ins. Co.*, No. 2:08-56-DCR, 2009 WL 2136268, at *2 (E.D. Ky. July 16, 2009)). A clear error of law occurs where the original ruling "overlooked or disregarded" some "argument or controlling authority" or where the moving party "successfully points out a manifest error[.]" *United States v. Ladeau*, No. 3:10-CR-00242-1, 2012 WL 5838125, at *2 (M.D. Tenn. Nov. 15, 2012) (quoting *Auday v. Wet Seal Retail, Inc.*, No. 1:10-CV-260, 2012 WL 124080, at *1 (E.D. Tenn. Jan. 17, 2012)).

In his Motion, Barnett claims that the Court failed to consider FNBO's use of the TWX system in conjunction with the LiveVox system. [R. 40, p. 3]. Specifically, Barnett contends that, together, TWX and LiveVox make up an ATDS because LiveVox can, and does, store numbers randomly or sequentially generated by TWX daily. *Id.* at 3–4 ("The TWX software is considered part of the 'equipment' [FNBO] used to contact [Barnett] … [FNBO] … attempt[s] [to] circumvent the TCPA by partitioning the features of an ATDS among two separate pieces of software."). The Court rejects this argument for two reasons.

First, LiveVox is not an ATDS simply because it stores a randomly or sequentially generated list of numbers from TWX on a daily basis. As made clear in the Court's previous

Memorandum and Opinion, LiveVox, the system actually used by FNBO to call Barnett, cannot, *itself*, store or produce numbers to be called using a random or sequential number generator. *See* [R. 37, pp. 4–9]; *see also Duguid*, 141 S. Ct. at 1170 (requiring "that, *in all cases*, whether storing or producing numbers to be called, *the equipment in question must use* a random or sequential number generator.") (emphasis added). Consequently, it cannot qualify as an ATDS as defined by *Duguid*. *See* 141 S. Ct. at 1167 (The definition of an ATDS under the TCPA does *not* encompass "equipment that can 'store' and dial telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'") (emphasis added).

Second, LiveVox is not an ATDS simply because it has a cooperative link to TWX. It is clear, from the record, that though FNBO utilizes both TWX and LiveVox, TWX and LiveVox are two *separate* systems/programs that perform *distinct* tasks:

- Every day, the TWX system "generates a file of all of [FNBO's] accounts that are past due and that are eligible to be called" on a particular day. [R. 32–11, p. 18, 17:16–18].
- Once curated, the file, which provides accounts containing customer profiles with telephone numbers, is sent to FNBO's LiveVox system. *Id.* at 18, 19, 17:18–21, 18:3–6.
- Once the LiveVox system receives the file, FNBO administrators work with the accounts to develop campaign strategies based on different criteria, such as times zones or balances. *Id.* at 22, 21:7–13. In addition, the FNBO administrators also determine which customers are to be called and in what order. *Id.* at 34–35, 38–40, 33:11–34:10, 38:11–40:5.
- The LiveVox system then uses the FNBO administrators' predetermined lists to call the designated customers. [R. 31–1, Ex. A, p. 3, ¶ 14].

Thus, to hold that LiveVox is an ATDS due to its tie with TWX would virtually subject a non-ATDS system/program to the TCPA because of its mere association with another, separate system/program. The Court declines to support such a broad expansion of the TCPA. *See Meier v. Allied Interstate LLC*, No. 20–55286, 2022 U.S. App. LEXIS 1413, at *3 (9th Cir. Jan. 19, 2022) ("[I]nterpreting 'equipment' to include distinct programs because they share a database or

other component would drastically expand the sweep of the TCPA."). Further, the cases cited by Barnett in support of his argument, *see* [R. 40, p. 3], fail to convince the Court to do otherwise, as both cases were decided pre-*Duguid*, which resolved a circuit split as to what qualified as an ATDS under the TCPA. *See* 141 S. Ct. at 1167 ("To qualify as an [ATDS], a device must have the capacity to *store* a telephone number *using a random or sequential generator* or produce a telephone number using a random or sequential number generator.") (emphasis added). Accordingly, for these reasons, Barnett has failed to meet the clear error standard under Rule 59(e).

### C. Manifest Injustice

In his Motion, Barnett argues that the Court should reconsider its previous Memorandum and Opinion, [R. 37], to prevent manifest injustice because it "impliedly approves of [FNBO's] evident attempt at circumventing the TCPA by partitioning the features of an ATDS among two separate pieces of software." [R. 40, p. 4]. Since the Court has already explained why such an argument is without merit, *see* Section II.B., Barnett's manifest injustice claim cannot stand. Consequently, the claim is rejected.

### III. Conclusion

For the reasons stated above, Barnett is not entitled to relief under Rule 59(e).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff David Barnett's Motion for Partial Reconsideration, [R. 40], is **DENIED**.

This the 10th day of June, 2022.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY